**In the Matter of the Arbitration Between ZEIGLER COAL COMPANY, Petitioner/Counter Respondent,**

**and**

**DISTRICT 12, UNITED MINE WORKERS OF AMERICA, Respondent/Counter Petitioner.**

No. 79–3191.

United States District Court, C. D. Illinois, Springfield Division.

Jan. 31, 1980.

Blan Law Offices, Kenneth W. Blan, Jr., Danville, Ill., for petitioner.

Thomas Gumbel, Runge & Gumbel, P.C., Collinsville, Ill., for respondent.

MEMORANDUM ORDER

J. WALDO ACKERMAN, District Judge.

The parties have presented their case to this Court and the petitioner, Zeigler Coal Co., has briefed the issue involved. This opinion shall constitute my findings of fact and conclusions of law in accordance with Federal Rules of Civil Procedure 52(a).

This action arises out of a petition by plaintiff Zeigler Coal Company to vacate an arbitrator's award in favor of the Union, District 12, United Mine Workers. The parties entered into a Coal Wage Agreement which became effective March 28, 1978. This dispute centers upon a provision of that agreement, Article XA, which provides for a paid Christmas vacation for qualified employees. Section (b)(i) of Article XA provides:

Qualifying Period: All employees who perform regularly scheduled work during each of seven (7) or more calendar months between December 24, 1977 and December 25, 1978 shall be eligible to take off from December 26 through December 31, 1978, and shall receive as compensation five (5) times the Employee's standard daily wage rate.

A similar provision covers the years 1979 and 1980. However, this dispute relates to the year 1978.

The Company paid the qualified employees their standard daily wage rate for the vacation period. A grievance was filed on behalf of thirteen "Top" Employees seeking an additional ¾ hours pay at time and a half for each day of Christmas vacation. These employees regularly worked ¾ hours of overtime each day, being compensated at their Standard Daily Wage rate for 7¼ hours and at time and a half for ¾ hours.

The grievance proceeded to arbitration, culminating in an award to the employees of ¾ hours overtime for each day of Christmas vacation. The Arbitrator stated his conclusion as follows:

> The fundamental purpose of payment being made to employees who are granted vacation days or holidays, days that represent surcease from work, is to assure that respite from labor will not require a monetary sacrifice. Holidays and vacations are to represent days of rest without financial sacrifice.
>
> Applying these objectives to the task of interpreting Section (b)(i), it is apparent that payment to the grievants of less than they ordinarily earn, for each day, was not in accord with the basic intent of Article XA. It is the basic intent that governs, not words that transgress, doubtless unintentionally, that basic intent.

The Company challenges the award primarily on the basis that the contract is unambiguous, yet the arbitrator disregarded the contract provision and instead substituted his "own brand of industrial justice". Article IV, Section (e) of the Agreement, entitled "Standard Daily Wage Rate" contains the following language: "The standard daily wage rates paid for work performed under this Agreement and set forth in Appendix A . . ." Appendix A sets forth in dollar amounts the standard daily wage rates for various job classifications. Part III of Appendix A governs the employees involved in this case. A footnote to that Appendix provides that the *Standard Hourly Wage Rate* is to be computed by dividing the *Standard Daily Wage Rate* by seven and one-quarter (7¼) hours. The Company contends that the Contract is explicit in providing for Christmas pay at the standard daily wage rate and that the Contract is equally explicit in defining what that rate is. Consequently, the company argues, the arbitrator exceeded his authority by adding to the Contract a provision for an additional ¾ hours overtime pay. The Company points out that the Contract expressly provides for payment of regularly scheduled overtime for holidays, vacation and other leave pay. *See* Articles IX(a) Bereavement Pay, (b) Jury Duty, (d) Military Duty, (e) Personal or Sick Leave, XII(e) Holidays, XIII(d) Regular Vacation and XIV(f) Graduated Vacation. The lack of a comparable provision in the Christmas vacation clause, the Company contends, clearly manifests the parties' intention that overtime compensation not be included.

■ The Court's power to vacate an arbitrator's award is severely restricted by statute, Title 9 U.S.C. § 10, and by the strong national policy favoring the resolution of grievances through arbitration where the parties have agreed to be bound by an arbitrator's determination. *Amoco Oil Co. v. Oil, Chemical and Atomic Workers International Union, Local 7–1,* 548 F.2d 1288, 1293 (7th Cir.), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977). The Supreme Court outlined the narrow scope of judicial review of arbitration awards in the *Steelworkers* trilogy, *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960);

*United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In the *Enterprise Wheel* case the Court pointed out that "[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." 363 U.S. at 596, 80 S.Ct. at 1360. *See Painters Local 171 v. Williams & Kelly, Inc.*, 605 F.2d 585 (10th Cir. 1979); *Cannon v. Consolidated Freightways Corp.*, 524 F.2d 290 (7th Cir. 1975).

This Court will review the arbitrator's award in this case with these admonishments in mind. However, the arbitrator is not unrestricted when fashioning an award. As the Supreme Court noted in *Enterprise Wheel*:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

363 U.S. at 597, 80 S.Ct. at 1361.

■ A Court may review and set aside an award if the arbitrator exceeds his contractual authority. *Cannon v. Consolidated Freightways Corp.*, 524 F.2d 290 (7th Cir. 1975). I find that the arbitrator, in rendering his decision in this case, exceeded his authority. I am compelled to reach this conclusion despite the great deference that must be accorded to the arbitrator's decision. The arbitrator, in his conclusion, admits that his opinion is contrary to the express language of the Contract. He concludes, without stating any basis for his conclusion, that the language employed in the Christmas vacation provision was an unintentional transgression. Where an agreement, as here, provides definitions of its own terms, the arbitrator clearly exceeds his authority by seeking conflicting definitions outside the record. *Timken Co. v. Local 1123, United Steelworkers of America*, 482 F.2d 1012, 1015 (6th Cir. 1973). Further, the arbitrator sought to buttress his conclusion with a statement regarding the general fundamental purpose of vacation pay, but he was not at liberty to dispense his "own brand of industrial justice."

In a recent Sixth Circuit case, *Detroit Coil Co. v. International Association of Machinists and Aerospace Workers*, 594 F.2d 575 (6th Cir. 1979), the Court of Appeals reversed a district court's affirmance of an arbitrator's award. The Agreement in that case provided that the company was to be notified of a request for arbitration within eight days of the Local Lodge meeting or any grievance would be considered settled. A letter requesting arbitration of a particular grievance was dated within the eight day period but was not received by the company prior to the expiration of the time limit. The arbitrator held that there was no evidence to indicate that it was the intent of the Union to consider the grievance settled and noted that in the past the parties had not used the excuse of time limits to deny a grievance. Further, the arbitrator found that to deny the arbitrability of this matter could result in the deterioration of the good relationship between the Company and the Union.

The district court denied the Company's petition to vacate the award, holding that the correctness of the arbitrator's decision was not subject to review, so long as his decision was based upon a construction of the contract and past interpretation and application of the contract by the parties. The Sixth Circuit, in reversing the district court, found that the arbitrator's award was contrary to the explicit terms of the Agreement and beyond the scope of his authority.

Thus, while an arbitrator has considerable latitude, his powers are not unlimited in the resolution of labor disputes. The arbitrator is confined to the interpreta-

tion and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions. *Id.* at 579.

Since the applicable section was clear and unambiguous, the arbitrator was dispensing his own brand of industrial justice by modifying the Contract.

The Fourth Circuit also reversed an affirmance of an arbitrator's award by a district court in *Monongahela Power Co. v. Local 2332, IBEW*, 566 F.2d 1196 (4th Cir. 1976). In that case, the arbitrator found that a strike by the employees violated the collective bargaining agreement. One clause of the Agreement provided that the Company had the unqualified right to discharge or discipline employees who violated the Agreement. The arbitrator attempted to modify the disciplinary action taken by the Company despite the Company's contention that under the language of the provision involved, once a violation of the Agreement was found, the arbitrator had no right to review, amend or alter the type of discipline imposed by the Company.

The district court affirmed the award. The Fourth Circuit, however, reversed, finding that although an arbitrator may construe ambiguous language, he is without any authority to disregard or modify plain and unambiguous provisions. *Id.* at 1199. This result stems from the fact that an arbitrator derives his authority from and is bound by the terms of the Contract from which he draws his authority and, as pointed out in the *Enterprise Wheel* case, *supra*, an award is legitimate only if it draws its essence from the collective bargaining agreement.

Another case which is strikingly similar to the case at bar is *Timken Co. v. Local 1123, United Steelworkers of America*, 482 F.2d 1012 (6th Cir. 1973). In that case, an employee was given a jail sentence for a traffic offense and spent twenty-nine days in jail. His wife promptly notified the Company of the reason for his absence. The Company terminated the employee under a "voluntary quit" provision of the Agreement whereby an unauthorized absence of seven consecutive scheduled work days was considered to be a voluntary quit.

The arbitrator found the "voluntary quit" provision inapplicable to cases such as this where the employee had no intention of quitting and had promptly notified the employer of his predicament. Rather, the arbitrator found the "voluntary quit" provision was intended to apply to those cases where an employee's location was unknown or where the employee was in control of the circumstances but nevertheless absented himself from work for longer than the prescribed period.

The district court vacated the award on the ground that since the arbitrator did not find the absence to have been authorized by the employer, he was bound by the employer's determination that the absence was unauthorized. The Court of Appeals affirmed the district court, holding that where an agreement provides definitions of its own terms, an arbitrator exceeds his authority when he seeks conflicting definitions outside the record. 482 F.2d at 1015. In the absence of evidence indicating the parties' intent was to restrict the scope of the word "unauthorized", the Court concluded that the arbitrator exceeded his authority in stating the provision's purpose without support in the record. *Id.* at 1015. *See also, Mistletoe Express Service v. Motor Expressmen's Union*, 566 F.2d 692 (10th Cir. 1977); *Steelworkers Cooperative Local Lodge 1849 v. Tubular Products Division*, 458 F.Supp. 192 (E.D.Wis.1978); *Litvak Packing Co. v. Butcher Workmen, Local 641*, 455 F.Supp. 1180 (D.Colo.1978). *Compare, Service Personnel and Employees Local 205 v. Carl Colteryahn Dairy, Inc.*, 436 F.Supp. 341 (W.D.Pa.1977).

I recognize, as the court did in *Timken*, that an arbitrator may properly utilize sources outside of the Agreement for context and guidance but the dearth of such information in his opinion here, as there, renders me unable to affirm an award which contradicts the clear language of the Agreement. Indeed, the Company filed an

affidavit, uncontroverted by the Union, stating that no evidence of contrary contract intent was presented to the arbitrator at the hearing. The Agreement plainly states that Christmas pay will be based upon the Standard Daily Wage Rate. The appendix to the Agreement sets forth, in dollar amounts, the Standard Daily Wage Rate. In the absence of some evidence that the parties, through their negotiations or otherwise, intended payment to be at a rate other than the Standard Daily Wage Rate, the arbitrator lacked the power to contradict the express language of the Agreement. Consequently, this Court grants the petitioner's motion to vacate the arbitrator's award.

Lastly, this Court notes that the defendant Union has filed no brief or memorandum of law in opposition to the motion to vacate the Arbitrator's award. Said brief was due January 7, 1980 and no extensions were requested. Although the petitioners bear the burden of proof in this case, such a brief would have been useful to this Court in making its determination.